Mario James **SANCHEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–01–00998–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 23, 2003.

---

**350**

Norman J. Silverman, Houston, for Appellant.

Kevin P. Keating, Asst. Dist. Atty., Houston, for State.

Panel consists of Justice TAFT, ALCALA, and PRICE.*

## OPINION

TIM TAFT, Justice.

Appellant, Mario James Sanchez, pled guilty without an agreed recommendation to possession with intent to deliver at least 400 grams of cocaine. Following a presentence investigation, the trial court assessed punishment at 15 years in prison and a $5,000 fine. We determine (1) whether appellant's open guilty plea waived his appellate challenge and (2) whether the trial court erred in denying appellant's motion to disclose a confidential informant. We reverse the judgment and remand the cause.

## Background

### A. The Facts

The factual background comes from testimony on appellant's motion to disclose the identity of a confidential informant. For a year, appellant had socialized with and bought marihuana from a man he knew only as "Ramsey." In August 2000, Ramsey telephoned appellant, offering a kilogram of cocaine at a good price. Appellant testified that he initially refused, but after Ramsey telephoned him a third time, appellant finally agreed to meet Ramsey at a gas station. Appellant admitted that he brought $16,000 at Ramsey's instruction, but claimed that he intended to buy marihuana with that money, not cocaine.

Appellant drove to the parking lot of a gas station where he and Ramsey had met before. Ramsey, who was sitting in the passenger seat of a car that another man

was driving, got out of the car and approached appellant. Appellant did not know the other car's driver. Ramsey got into appellant's car and began speaking about the cocaine. Appellant claimed that he again balked at buying cocaine. Ramsey instructed appellant to drive to another parking lot, where the other car's driver would meet them. Appellant complied.

Appellant and Ramsey met the other driver at the second parking lot and got into that man's car. For a short while, Ramsey and the driver spoke in Spanish, which appellant did not understand. The driver then passed a box containing the kilogram of cocaine to Ramsey, who showed it to appellant. Appellant claimed that he again refused the purchase. However, he testified that Ramsey pressured or enticed him, by at least three times saying things like the driver was a "big guy" whom "we need to take care of" and that "we are already here with this [cocaine and] I don't know what we're supposed to do." The driver never said a word to appellant, but spoke to Ramsey in Spanish before Ramsey allegedly enticed appellant and also witnessed Ramsey's subsequent discussions with appellant. Appellant eventually gave the $16,000 to Ramsey, who gave the money to the driver and the cocaine to appellant. Appellant got in his car and drove off.

Houston Police Department Narcotics Division Officers Bradley and Pena participated in surveillance of the transaction in the second parking lot. Officer Bradley testified that he knew one of the individuals in the car in which the sale took place, but the trial court sustained the State's objection to disclosing whether that person was the driver or Ramsey. Officer Bradley observed appellant from the officer's

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

position in the second parking lot. Officer Bradley believed that appellant bought cocaine. However, there was no eavesdropping device in the car in which the transaction occurred, and neither officer could see or hear any of the negotiations or the sale itself.

Houston Police Department Officers Mouser and De la Cruz had been waiting in a marked police car near the second parking lot to support Officers Bradley and Pena. As appellant left the parking lot, Officer Bradley instructed Officers Mouser and De la Cruz to stop appellant after first obtaining independent probable cause.[1] All four officers claimed that Officers Mouser and De la Cruz pulled appellant over after observing him violate several traffic laws. Appellant denied violating any traffic laws. Appellant pulled his car over, and the officers parked their car and began approaching appellant on foot; however, appellant fled by car before the officers reached him. Appellant eventually hit a dead end and had to abandon his car. The pursuing officers captured appellant and discovered the cocaine, which fell or was thrown to the ground as appellant ran. Neither Ramsey, nor the driver, nor anyone who could be classified as a confidential informant, was present when appellant fled or was apprehended.

Unlike appellant, Ramsey and the driver were not stopped as they left the parking lot. Appellant testified that he had learned since the incident that Ramsey and the driver were working for the State. However, despite hiring an investigator, appellant could not locate Ramsey.

**B.  The Motions and Hearings**

To support his entrapment defense, appellant moved pretrial for disclosure of any informant who participated in the cocaine transaction. On December 14, 2000, at a hearing on that motion, defense counsel clarified that he wanted to know whether a confidential informant or police officer was the unknown driver of the other car. Counsel again stated that he needed to know that individual's identity for his entrapment defense. The prosecuting attorney at the time of this hearing denied that the person who had delivered the cocaine was either an informant or an officer. The trial court denied appellant's motion.

Nonetheless, the trial court again took up appellant's confidential-informant motion at a pretrial hearing on March 19, 2001. The trial court may have reconsidered the motion because appellant had alleged in a motion for continuance filed after the initial ruling that the newly assigned prosecuting attorney had since admitted that an informant had been involved. At the March 19 pretrial hearing, appellant and Officers Bradley, Mouser, De la Cruz, and Pena testified to the information set out in the factual section above. Following their testimony, appellant again requested disclosure of the identity of any informants or cooperating individuals who had delivered the cocaine to support his entrapment defense. The trial court deferred a ruling until the following morning.

The next morning, appellant re-urged his confidential-informant motion, arguing that "the only witness that could ... shed any light on whether he could give evidence or not would be the informant himself. ... [M]y client alleged that he was somewhat pressured ... and ... if the idea for the crime is hatched in the mind of the State's officers or their agents, then we're entitled to a charge on that entrapment but we need a witness to support it and the—obviously my client can testify,

---

**1.**  It appears that Officers Bradley and Pena wanted independent probable cause because the officers were unsure whether appellant had purchased the cocaine.

but the—the testimony of the person that was in the car that engaged in the negotiations is critical. . . ." Appellant added that he did not object to an in camera hearing to question the informant. The trial court deferred conducting an in camera hearing or ruling on the confidential-informant motion.

Following jury selection, the trial court held an in camera hearing at which it questioned Officers Pena and Bradley. That volume is under seal. It is evident from the sealed testimony that an informant was involved in the sale to some extent, that Ramsey contacted the informant about the sale, and that the informant was actually present at the sale in the second parking lot.

When the trial court later asked appellant to announce ready for trial, appellant responded that he needed a ruling on his confidential-informant motion. The trial court ordered the confidential-informant motion carried with the case. Appellant objected, asking the trial court to rule then because "if we're going to get the informant's identity we need to have it so [that] we can start trying to get him here." The trial court then denied the confidential-informant motion. Appellant immediately advised the trial court that he wished to plead guilty.

Before appellant pled, the trial court ordered a short recess. Any discussions at that recess were unrecorded. After that recess, the trial court changed its ruling and ordered the State to produce the informant's name. The State declined, and appellant immediately moved to dismiss the indictment. The trial court denied appellant's dismissal motion and stated, "The Court will take this under consideration." The trial court then ordered another recess. Any discussions during the second recess were also unrecorded. Immediately after the second re-

cess, the trial court admonished appellant, who then pled guilty. During the plea proceedings, the trial court noted that it had—apparently during the second recess—withdrawn its ruling ordering the State to disclose the confidential informant's identity.

## Waiver

■ Relying on *Young v. State,* the State initially claims that appellant's open guilty plea waived any appellate complaint concerning the ruling on appellant's confidential-informant motion. *See* 8 S.W.3d 656 (Tex.Crim.App.2000). We disagree.

■ "[A] valid plea of guilty . . . 'waives' or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error." *Young,* 8 S.W.3d at 667. In the words of our sister court of appeals, there must usually be a nexus—temporal or otherwise—between the error and the judgment of guilt. *See Brink v. State,* 78 S.W.3d 478, 484 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

Appellant objected to the trial court's ordering the confidential-informant motion carried with the case. When the trial court later denied the confidential-informant motion, appellant immediately asked to plead guilty. When the trial court later ordered disclosure and the State refused, appellant immediately moved to dismiss the indictment. Although we do not know what transpired during the recess at which the trial court gave its final ruling, the very next event was appellant's giving his plea. There is thus a strong temporal connection between the adverse rulings on appellant's confidential-informant motion and his guilty plea. *Compare Brink,* 78 S.W.3d at 484 (in concluding that adverse ruling was waived under *Young,* considering, among other things, that defendant's

plea came over two months after that ruling).[2]

Moreover, apparently because the officers actually saw appellant discard the cocaine, appellant was relying on entrapment as his principal defense. No one could find Ramsey after the transaction, and none of the officers involved was privy to the sale itself or to the negotiations leading up to it, which events were important to that defense. Therefore, unless the trial court required the State to divulge the informant's identity, appellant had only his own testimony on entrapment. Under the facts of this case, a ruling on this motion directly affected appellant's defense to prosecution because it deprived him of the only other witness to the drug sale, regardless of how that witness might ultimately testify.

The State argues that the ruling on appellant's confidential-informant motion is comparable to rulings on a motion to substitute counsel or to transfer jurisdiction from a juvenile court to the district court, which rulings our sister courts of appeals have held were not directly related to the determination of guilt and were thus waived under *Young*. *See Brink*, 78 S.W.3d at 484; *Faisst v. State*, No. 12–00–00289–CR, —— S.W.3d ——, 2001 WL 1535453 (Tex.App.-Tyler 2001, pet. granted) (designated for publication).

We agree that the rulings in *Brink* and *Faisst* had nothing to do with the determinations of the guilt in those cases, but we disagree with the State's comparing those rulings to the one here. We conclude that the denial of appellant's confidential-informant motion is more like the ruling considered in *Young* than the rulings considered in *Brink* and *Faisst*. In *Young*, the Court of Criminal Appeals held that a judgment of guilt was not independent of the denial of a suppression motion because the judgment would not have been supported without the evidence that the defendant had sought to suppress. *See id.*, 8 S.W.3d at 667; *see also Guerrero v. State*, 64 S.W.3d 436, 440 (Tex.App.-Waco 2001, no pet.) (citing *Young* to hold that appellant's open guilty plea did not waive challenge to confession that was allegedly involuntary and given in violation to right to counsel). As the State points out, the suppression ruling in *Young* concerned evidence supporting the judgment of guilt, which is not exactly the case here. *See id.* This distinction is not material, however. Appellant's position is that the informant's testimony was relevant to and needed for a defense to prosecution. *See* Tex. Penal Code Ann. § 8.06(a) (Vernon 1994) (making

---

2. Because there is no record of the recess preceding appellant's plea, the State speculates that "it is likely" that discussions during the recess convinced appellant "it was in his best interest to plead guilty." Nothing supports this speculation. Moreover,

> In *Young* ..., there was no indication in the opinion of a conditional plea. Still, Young entered a plea immediately after her motion to suppress was overruled. The Court of Criminal Appeals found the plea was not independent of the pretrial ruling. Similarly, there is no indication Hargrove's plea was conditional. While the better practice may be to create a record showing the decision to plead was not independent of the pretrial ruling, the Court of Criminal

Appeals seems to have left to the courts to assess the issue on a case-by-case basis. With guilty pleas, we cannot analyze the pretrial ruling in the context of the entire factual circumstances to determine whether it formed part of the basis for deciding to plead guilty. Accordingly, we must rely upon the record at the pretrial hearing and look to the nature of the issue upon which the trial court ruled.

*Hargrove v. State*, 40 S.W.3d 556, 558 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) (holding challenge to suppression ruling not waived under *Young* even though record did not affirmatively indicate that the ruling was part or all of reason for plea).

entrapment a defense to prosecution). That defense can result in acquittal in the right circumstances. *See* TEX. PENAL CODE ANN. § 2.03(d) (Vernon 1994) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted."). An error affecting this type of defense is thus an error affecting the determination of guilt for purposes of *Young*.

We cannot say that appellant's guilty plea was rendered independent of or was unsupported by the adverse ruling on that motion. Accordingly, we hold that appellant's open guilty plea did not waive his appellate challenge.

### Denial of Confidential–Informant Motion

In his sole issue, appellant argues that the trial court erred in denying his motion to dismiss the indictment when the State refused to reveal the confidential informant after having been ordered to do so.

As the background section shows, the trial court withdrew its ruling granting appellant's confidential-informant motion immediately after denying appellant's motion to dismiss the indictment. Appellant's sole issue thus complains of a superseded ruling. However, fairly considering the object of and argument supporting appellant's challenge, we construe appellant's issue as also challenging the denial of his confidential-informant motion.[3] *See* TEX. R.APP. P. 38.1(e) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *see also Stephenson v. LeBoeuf*,

16 S.W.3d 829, 843–44 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (" 'The new 'issues presented' practice signals the intention of the Texas Supreme Court to have all appeals judged on the merits of the controversies rather than hypertechnical waiver issues. Appellate courts must now look to the argument to determine the nature of complaints, including any subsidiary issues, rather than the points or issues alone. If the court is able to ascertain the nature of the complaint from the argument, the issue will be preserved for appellate review. Only in the rare instance of an indecipherable argument should an issue be deemed waived by the court . . . .' ") (quoting 5 TEX. JUR.3D *Appellate Review* § 429 (1999)); *cf.* TEX.R.APP. P. 38.9 ("Because briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient . . . .").

### A. The Law

■ The defendant has the threshold burden to show that the informant's identity must be disclosed. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App.1991). To carry this burden, the defendant must present evidence, from any source, but cannot rely on mere speculation or conjecture. *Id.* Because the defendant may not actually know the nature of the informant's testimony, the defendant need make only a plausible showing of how the informant's testimony may be important, *i.e.*, how that testimony could be necessary to a fair

---

**3.** For example, appellant argues, "Moreover, appellant was clearly entitled to disclosure." He follows that statement with a statement of the law concerning when an informant's identity must be disclosed under rule 508(c)(2). Appellant then explains how the facts he adduced met the legal standard for disclosure.

Finally, appellant states that "[t]he trial court's ruling compelling disclosure was proper" and asks that we remand with instruction for the trial court to order the indictment dismissed unless the State discloses the informant and to "comply with the procedures delineated in rule 508."

determination of guilt or innocence. *Id.; Anderson v. State,* 817 S.W.2d 69, 72 (Tex. Crim.App.1991); *see* Tex.R. Evid. 508(c)(2). The defendant must still show that the informant's potential testimony would significantly aid him. *Bodin,* 807 S.W.2d at 318. "Whenever it is shown that an informant was an eyewitness to an alleged offense[,] then certainly that informant can in fact give testimony 'necessary to a fair determination of the issues of guilt, innocence.'" *Anderson,* 817 S.W.2d at 72; *accord Lopez v. State,* 824 S.W.2d 298, 300 (Tex.App.-Houston [1st Dist.] 1992, no pet.), *abrogated on other grounds by Clewis v. State,* 922 S.W.2d 126 (Tex.Crim. App.1996).

▪ Once the defendant makes a plausible showing "that an informer may be able to give testimony necessary to a fair determination ... on guilt or innocence in a criminal case, and the public entity invokes the privilege, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony." Tex.R. Evid. 508(c)(2); *accord Southwell v. State,* 80 S.W.3d 647, 650 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We review the trial court's ruling on a confidential-informant motion for abuse of discretion. *Southwell,* 80 S.W.3d at 650.

**B. Discussion**

The trial court must have determined that appellant carried his initial burden of showing that the informant's testimony was potentially important to his sole defense because the trial court held an in camera hearing. *See* Tex.R. Evid. 508(c)(2). That implicit determination would have been supported by the evidence presented before the in camera hearing, particularly the testimony that an individual who could have been an informant witnessed the transaction and was the only person—given that appellant could not find Ramsey and the officers neither heard nor saw the sale—who could possibly corroborate appellant's entrapment defense.

▪ There was not much relevant testimony elicited at the in camera hearing, but what relevant testimony there was confirmed that a confidential informant existed, that Ramsey contacted him about the transaction, and that the informant met with appellant at the parking-lot buy. Also, appellant's purchase of the cocaine, which he claimed was due to the informant's alleged entrapment, occurred very shortly before appellant's possession of and arrest for the same cocaine, to which the officers testified. There were no significant intervening circumstances between these two events. For these reasons, the in camera evidence showed that the informant, as an eyewitness to the purchase, could potentially give testimony necessary to a fair determination of appellant's guilt or innocence, specifically, appellant's entrapment defense. *See* Tex.R. Evid. 508(c)(2); *Anderson,* 817 S.W.2d at 72 (holding defendant met initial burden under rule 508(c)(2) because showed informant was eyewitness to crime); *cf. Bodin,* 807 S.W.2d at 318–19 (holding trial court erred in not holding in camera hearing when defendant showed that he needed to know, for possible entrapment defense, whether informant was certain individual who had been in appellant's apartment on given day). Accordingly, we hold that the trial court abused its discretion in overruling appellant's confidential-informant motion.

**C. Harm**

▪ We must still review for harm. *See Anderson,* 817 S.W.2d at 72 (reviewing for harm under former harmless error standard after jury trial); *Lopez,* 824 S.W.2d

at 300–01 (same). A constitutional error within the meaning of rule 44.2(a) is an error that directly offends the United States or Texas constitution, without regard to any statute or rule that might also apply. *Shelton v. State,* 41 S.W.3d 208, 218 (Tex.App.-Austin 2001, pet. ref'd); *Alford v. State,* 22 S.W.3d 669, 673 (Tex. App.-Fort Worth 2000, pet. ref'd); *see* Tex. R.App. P. 44.2(a). This error does not meet that test. Accordingly, we apply the "other error" harmless-error standard for non-constitutional error. *See* Tex.R.App. P. 44.2(b); *Beal v. State,* 35 S.W.3d 677, 678 (Tex.App.-Houston [1st Dist.] 2000) (applying rule 44.2(b) to erroneous failure to order disclosure of confidential informant's identity), *rev'd on other grounds,* 91 S.W.3d 794 (Tex.Crim.App.2002) (designated for publication). Under that standard, we disregard the error unless appellant's substantial rights were affected. Tex. R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the judgment. *Cf. King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (applying this standard to jury verdict). We look at all the evidence and totality of circumstances in determining harm. *Id.*

Appellant testified that he was enticed into purchasing the cocaine after having first refused. None of the police officers involved participated in the pre-sale negotiations or saw or overheard what appellant, Ramsey, or the driver discussed in the car during the sale itself. Ramsey, the only other witness to the pre-sale negotiations and the sale, could not be located.

The trial court erroneously denied appellant's motion to disclose the confidential informant's identity. That left only appellant's testimony concerning entrapment, with no possibility of corroboration. Appellant pled guilty immediately after the trial court's ruling effectively foreclosed any possibility of obtaining corroborating evidence on appellant's sole defense.

The fact that the evidence on appellant's motion showed that he fled after the sale and abandoned the cocaine in the officers' clear view—that is, that he clearly possessed the cocaine—does not render harmless error relating to his entrapment defense, which depended on facts leading up to and including the sale, not facts (such as flight or abandonment) occurring after the sale.[4] Nor does appellant's stipulating to possessing the cocaine with intent to deliver render harmless the trial court's earlier error: entrapment is the type of defense that assumes that the charged conduct was committed, but prevents prosecution nonetheless. *See* Tex. Penal Code Ann. § 8.06(a) ("It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense."); *Norman v. State,* 588 S.W.2d 340, 345 (Tex.Crim.App.1979) (stating entrapment defense assumes that offense was committed), *limited on other grounds, Reese v. State,* 877 S.W.2d 328 (Tex.Crim.App.1994). Moreover, our focus in determining harm is on whether the error had a substantial and injurious effect

---

4. Some of the trial court's questions at the in camera hearing concerned whether a confidential informant was present from the moment that appellant committed the traffic offenses to the point when he was arrested. That line of questioning was consistent with the trial court's belief, as revealed during several discussions at the bench and some rulings, that the only events pertinent to appellant's case were those involving his traffic violations and the subsequent events leading up to his arrest. That is, the trial court appears erroneously to have believed that the events leading up to and including the sale were not pertinent to appellant's defense.

on appellant's decision to plead guilty in the first place.

Accordingly, we hold that the error affected appellant's substantial rights. *See* TEX.R.APP. P. 44.2(b).

We sustain appellant's sole issue.

### Conclusion

We reverse the judgment of the trial court and remand the cause for the trial court to conduct proceedings consistent with rule 508(c)(2). *See* TEX.R. EVID. 508(c)(2) ("If the court finds that there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose the informer's identity, the court ... in a criminal case shall, on motion of the defendant, and may, on the court's own motion, dismiss the charges as to which the testimony would relate.").