TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00766-CR






Michael Carter
, Appellant



v.



The State of Texas
, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 9024158, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N 




 After his motion to suppress evidence was overruled by the district court, appellant
Michael Anthony Carter pleaded guilty to the state jail felony of delivery of cocaine in an amount
of less than one gram. See Tex. Health & Safety Code Ann. § 481.112(a) (West Supp. 2003). In
accord with a negotiated plea, the court assessed punishment at confinement in a state jail facility
for one year. By a single point of error, appellant contends that the district court erred by not
suppressing photographic evidence because it was obtained as the result of an unlawful detention. 
Because we find beyond a reasonable doubt that the error, if any, did not contribute to appellant's
conviction, we will affirm the judgment.


BACKGROUND


 Detective Aaron Bishop testified that on the night of March 14, 2002, he participated
in a "buy-bust" operation for the Austin Police Department. Bishop worked as the undercover
officer posing as a drug buyer while a "takedown" team waited elsewhere for a description of the
suspect in order to make the arrest. Bishop drove up to a store and a drug dealer approached the
vehicle from the passenger side. Bishop purchased a "twenty" and then drove away. He
immediately described the suspect by radio to the "takedown" officers. Bishop testified that he
described the suspect over the radio as a black male wearing black-colored short pants and a white
tank top T-shirt. Bishop testified that he also noticed a tattoo on the suspect's neck, but did not
mention the tattoo in his radio description or in his report.

 Officer Kenneth Koch testified that he was part of the team that, after hearing
Bishop's description of the suspect over their radio, moved in to apprehend the suspect. According
to Koch, the suspect was described as a black male wearing a white tank top, white shorts, and a cap. 
Officer Koch and another officer exited their patrol vehicle and chased the suspect for approximately
forty seconds down an alleyway. The chase began at the store, located on the corner of 14th Street
and Cedar Street. The officers did not recognize the suspect or get a look at his face. The suspect
evaded the officers, and the officers lost visual observation of the suspect. When the officers turned
a corner on to 13th street, they immediately saw a black male seated on the porch steps of a
residence. Koch approached the individual and shined a flashlight in his face. According to Koch,
he got a good look at the individual because of the flashlight and illumination from street lamps. 
Koch did not testify that he had a conversation with the individual or that officers engaged in any
transaction with the individual. According to Koch, he observed the individual for less than a minute
before the individual stood up and went inside the house. The officers then withdrew from the scene. 

 Koch testified that he believed the individual to be the suspect they had been chasing
based on "the clothing he was wearing and the clothing that he wasn't wearing because . . . during
the chase, he fell down, after getting up from the ground he stripped his T-shirt off, threw it on the
ground. When I saw him on the steps he didn't have a T-shirt on, but he was wearing the same
shorts with the belt." However, Koch testified that he did not recall whether the individual on the
porch steps was sweating, out of breath, or exhibiting any other signs of someone who had just been
chased by the police for forty seconds. Koch's description of the suspect in his written report did
not include any identifying marks or unique features such as a tattoo on the neck.

 According to Koch, appellant became a suspect when the police linked him to 2706
East 13th Street, which is the address at which Koch had encountered the individual whom he
believed to be the suspect from the buy-bust operation. The record reflects that Officer Koch's
superior, Detective Ellsworth, researched the address on a crime database and learned that appellant
had lived at that address when he was previously arrested. Detective Ellsworth showed Officer Koch
a DICATS photograph, or prior-arrest photograph, of appellant and told Koch that appellant was
believed to live at 2706 East 13th Street. However, Koch could not make a positive identification
of appellant's DICATS photograph as being the suspect he had encountered at the residence. As a
result, Koch's unit discussed "getting a photograph, a current one" of appellant.

 Officer Corey McKenna testified that on the afternoon of March 27, 2002, he and
another officer detained appellant and took a Polaroid photograph of him. Detective Ellsworth had
given McKenna and the other officer the DICATS photograph of appellant with instructions to locate
appellant for identification purposes. While on patrol, the officers observed appellant walking with
another individual along 14th Street. The officers drove towards appellant and the other individual
with their patrol vehicle's lights flashing. Both officers got out of the vehicle, armed and in uniform,
and on approach McKenna advised appellant that "he matched the description of someone who had
run from us in an operation a week prior." After patting him down, McKenna asked appellant if he
could talk to him regarding the buy-bust operation. Appellant consented to talking, but denied that
he was the suspect. McKenna testified that the officers sought to keep appellant there long enough
for Officer Koch to arrive on the scene and make a positive identification.

 After about ten minutes of what McKenna described in testimony as just a "normal"
and "laid-back" conversation regarding the neighborhood, the officers informed appellant that they
were waiting on Officer Koch to arrive and "take a look" at appellant. According to McKenna, at
that point, appellant expressed a desire to leave. McKenna told appellant that, technically, he was
being detained for identification purposes and that he was not free to leave. The officers were then
informed that Officer Koch was not available to make the identification. Two other officers had at
this point arrived on the scene. The officers decided to take a Polaroid photograph of appellant. 
According to McKenna, appellant did not object to having his picture taken, and in fact asked if he
could pose for the photograph. After the officers had taken appellant's photograph, they departed
from the scene. McKenna testified that the entire encounter lasted approximately thirteen to fifteen
minutes.

 Later that same day, Detective Ellsworth showed the Polaroid photograph to Bishop
and Koch. Appellant's name and the address "2706 East 13th Street" was printed at the bottom of
the photograph. According to Bishop, Detective Ellsworth asked him "if this is who I thought it was,
if this was Michael Carter." Based on the photograph, Bishop testified, he was able to identify
appellant as the suspect who had sold him the cocaine. Koch testified that when Ellsworth showed
him the photograph of appellant, he identified him as the individual that he had encountered sitting
on the steps of 2706 East 13th Street on the night of the chase. The photograph of appellant and the
officers' positive identification based on the photograph subsequently served as the basis to arrest
appellant.


DISCUSSION


 The district court denied appellant's motion to suppress the photographic evidence,
concluding that the "officers had reasonable suspicion to stop and detain the defendant to take his
photo to confirm he had been involved in a drug sale to another officer." The standard of review for
a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings
of fact, but conducting a de novo review of the court's application of search and seizure law to those
facts. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
88-89 (Tex. Crim. App. 1997). At the suppression hearing, the trial court is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their testimony. State v. Ballard,
957 S.W.2d 889, 891 (Tex. Crim. App. 1999). Here, the district court made explicit findings of fact.

 Appellant argues that, because there was no reasonable suspicion to support his
detention, he was detained in violation of the United States and Texas Constitutions. See U.S. Const.
amends. IV, XIV; Tex. Const. art. I, § 9; see also United States v. Sokolow, 490 U.S. 1, 7 (1989)
(police officer may make "Terry stop" and "briefly detain a person for investigative purposes if the
officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'
even if the officer lacks probable cause") (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)); Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The State responds that when Officer McKenna
detained appellant he reasonably suspected that appellant was the same person as the suspect from
the buy-bust operation because "he knew: (1) the appellant matched the physical description of the
suspect; (2) the appellant resided at the address where the suspect was found on the night of the buy-bust; and (3) the appellant and suspect both had tattoos on their necks." According to the State,
under the totality of the circumstances this knowledge provided reasonable suspicion to detain
appellant for investigative purposes. See Alabama v. White, 496 U.S. 325, 330 (1990).

 In the present case, we must affirm the district court's judgment regardless of whether
there was error because any error would be harmless. The Texas Court of Criminal Appeals has held
that all errors, with the exception of certain federal constitutional errors labeled as "structural," are
subject to a harmless error analysis. (1) See Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App.
1997) (superseded by statute on other grounds). The issue raised in appellant's appeal has not been
labeled a "structural" error, and thus we must review the error accordingly. See Silva v. State, 64
S.W.3d 430, 433 (Tex. App.--San Antonio 2001, no pet.). Appellant's right to be free from an
unreasonable seizure is of constitutional dimension; thus, if the record reveals constitutional error
that is subject to the harmless error review, we must reverse a judgment of conviction or punishment
unless we determine beyond a reasonable doubt that the error did not contribute to the conviction
or punishment. Tex. R. App. P. 44.2(a); see Silva, 64 S.W.3d at 433-34; Villalobos v. State, 999
S.W.2d 132, 136 (Tex. App.--El Paso 1999, no pet.). Where constitutional error is shown, the
burden is on the State to come forward with reasons why the error is harmless. Villalobos, 999
S.W.2d at 136 (citing Merritt v. State, 982 S.W.2d 634, 636 (Tex. App.--Houston [1st Dist.] 1998,
no pet.)).

 Here, the State argues that, because Detective Bishop positively identified appellant
as the suspect who sold him the cocaine at the suppression hearing, the photograph or any testimony
based on it, even if obtained as the result of an unlawful detention, did not contribute to appellant's
conviction. We agree. On redirect examination, Bishop testified:


Q: [State's attorney] Detective, I just have a couple of questions. First of all, when
you conduct these operations--I have asked you this before, but I just want to
clarify. When you conduct these operations do you view them with the specific
intent to observe the individual you purchase the cocaine from with a specific
purpose of being able to identify him at a later time?



 Yes, sir.




 Do you see the individual in the courtroom today that you bought the cocaine
from?




 Yes, sir, I do.




 Could you point him out and describe what he is wearing?




 Michael Carter. He is going to be in the jail uniform right there, the dark blue
one.



. . .




 And are you basing that identification on your memory of when you purchased
the cocaine from him or the photograph?




 Memory of him and, like I said, the tattoo on his neck.




 Did you see the tattoo on his neck that night?




 Yes, sir.




In written findings of fact, the district court found that on the night of the buy-bust operation "[t]he
defendant placed his head in the window to speak to [Bishop] and [Bishop] got a good look at the
defendant," and that Bishop "I.D.'d the defendant in open court as the person from whom he had
bought the cocaine." The trial court is the sole trier of fact and judge of the weight and credibility
to be given a witness's testimony. Ballard, 987 S.W.2d at 891. 

 The record reflects that, in addition to his motion to suppress photographic evidence,
appellant made a motion to suppress the in-court identification of appellant by the officers. The
district court overruled this motion. (2) Although the district court did not expressly find that Bishop's
in-court identification of appellant was untainted by any police misconduct, Bishop's testimony
supports the conclusion that his in-court identification of appellant was independent of any viewing
of the photograph. Thus, even if the unlawful detention ultimately resulted in an illegal arrest,
Bishop's ability to make a positive in-court identification of appellant as the person who sold him
the cocaine cannot be suppressed. See United States v. Crews, 445 U.S. 463, 471 (1980) (concluding
that in-court identification of defendant not suppressible if untainted by violation of defendant's
Fourth Amendment rights); see also Pichon v. State, 683 S.W.2d 422, 426 (Tex. Crim. App. 1984)
("[A] defendant's face cannot be a suppressible fruit of an illegal arrest.")

 Although the photograph was used by Bishop and Koch to positively identify
appellant as the suspect, and their positive identification subsequently resulted in appellant's arrest,
the admissibility of that evidence was not necessary for the State to prosecute appellant. This is true
notwithstanding any question that might arise regarding the reasonableness of the investigative
detention. The record reveals that, even without the photograph or identification testimony based
on the photograph, there remains Detective Bishop's in-court identification of appellant as the person
who sold him the cocaine. The district court had this evidence before it when it accepted appellant's
guilty plea. Thus, we find beyond a reasonable doubt that the district court's error did not contribute
to the judgment on the plea of guilty because it did not have a substantial effect on the appellant's
decision to plead guilty. See Sanchez v. State, 98 S.W.3d 349, 357-58 (Tex. App.--Houston [1st
Dist.] 2003, pet. filed) ("[O]ur focus in determining harm is on whether the error had [an] . . . effect
on appellant's decision to plead guilty in the first place."); cf. Villalobos, 999 S.W.2d at 136
(constitutional error not harmless because cannot find beyond reasonable doubt that error did not
substantially affect appellant's decision to plead guilty). We overrule appellant's point of error.


CONCLUSION


 Having overruled appellant's point of error, we affirm the district court's judgment
on the plea of guilty and sustain appellant's conviction.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: August 14, 2003

Do Not Publish
1. "Structural" errors are constitutional violations affecting the "framework within which the
trial proceeds, rather than simply an error in the trial process itself." See Linton v. State, 15 S.W.3d
615, 620 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). Structural errors include: the total
deprivation of the right to counsel at trial; a judge who was not impartial; unlawful exclusion of
members of the defendant's race from a grand jury; and the right to self-representation at trial. See
Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991).
2. Appellant does not appeal this ruling.