# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00766-CR

**Michael Carter, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. 9024158, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After his motion to suppress evidence was overruled by the district court, appellant Michael Anthony Carter pleaded guilty to the state jail felony of delivery of cocaine in an amount of less than one gram. *See* Tex. Health & Safety Code Ann. § 481.112(a) (West Supp. 2003). In accord with a negotiated plea, the court assessed punishment at confinement in a state jail facility for one year. By a single point of error, appellant contends that the district court erred by not suppressing photographic evidence because it was obtained as the result of an unlawful detention. Because we find beyond a reasonable doubt that the error, if any, did not contribute to appellant's conviction, we will affirm the judgment.

## BACKGROUND

Detective Aaron Bishop testified that on the night of March 14, 2002, he participated in a "buy-bust" operation for the Austin Police Department. Bishop worked as the undercover

officer posing as a drug buyer while a "takedown" team waited elsewhere for a description of the suspect in order to make the arrest. Bishop drove up to a store and a drug dealer approached the vehicle from the passenger side. Bishop purchased a "twenty" and then drove away. He immediately described the suspect by radio to the "takedown" officers. Bishop testified that he described the suspect over the radio as a black male wearing black-colored short pants and a white tank top T-shirt. Bishop testified that he also noticed a tattoo on the suspect's neck, but did not mention the tattoo in his radio description or in his report.

Officer Kenneth Koch testified that he was part of the team that, after hearing Bishop's description of the suspect over their radio, moved in to apprehend the suspect. According to Koch, the suspect was described as a black male wearing a white tank top, white shorts, and a cap. Officer Koch and another officer exited their patrol vehicle and chased the suspect for approximately forty seconds down an alleyway. The chase began at the store, located on the corner of 14th Street and Cedar Street. The officers did not recognize the suspect or get a look at his face. The suspect evaded the officers, and the officers lost visual observation of the suspect. When the officers turned a corner on to 13th street, they immediately saw a black male seated on the porch steps of a residence. Koch approached the individual and shined a flashlight in his face. According to Koch, he got a good look at the individual because of the flashlight and illumination from street lamps. Koch did not testify that he had a conversation with the individual or that officers engaged in any transaction with the individual. According to Koch, he observed the individual for less than a minute before the individual stood up and went inside the house. The officers then withdrew from the scene.

Koch testified that he believed the individual to be the suspect they had been chasing based on "the clothing he was wearing and the clothing that he wasn't wearing because . . . during

2

the chase, he fell down, after getting up from the ground he stripped his T-shirt off, threw it on the ground. When I saw him on the steps he didn't have a T-shirt on, but he was wearing the same shorts with the belt." However, Koch testified that he did not recall whether the individual on the porch steps was sweating, out of breath, or exhibiting any other signs of someone who had just been chased by the police for forty seconds. Koch's description of the suspect in his written report did not include any identifying marks or unique features such as a tattoo on the neck.

According to Koch, appellant became a suspect when the police linked him to 2706 East 13th Street, which is the address at which Koch had encountered the individual whom he believed to be the suspect from the buy-bust operation. The record reflects that Officer Koch's superior, Detective Ellsworth, researched the address on a crime database and learned that appellant had lived at that address when he was previously arrested. Detective Ellsworth showed Officer Koch a DICATS photograph, or prior-arrest photograph, of appellant and told Koch that appellant was believed to live at 2706 East 13th Street. However, Koch could not make a positive identification of appellant's DICATS photograph as being the suspect he had encountered at the residence. As a result, Koch's unit discussed "getting a photograph, a current one" of appellant.

Officer Corey McKenna testified that on the afternoon of March 27, 2002, he and another officer detained appellant and took a Polaroid photograph of him. Detective Ellsworth had given McKenna and the other officer the DICATS photograph of appellant with instructions to locate appellant for identification purposes. While on patrol, the officers observed appellant walking with another individual along 14th Street. The officers drove towards appellant and the other individual with their patrol vehicle's lights flashing. Both officers got out of the vehicle, armed and in uniform, and on approach McKenna advised appellant that "he matched the description of someone who had

3

run from us in an operation a week prior." After patting him down, McKenna asked appellant if he could talk to him regarding the buy-bust operation. Appellant consented to talking, but denied that he was the suspect. McKenna testified that the officers sought to keep appellant there long enough for Officer Koch to arrive on the scene and make a positive identification.

After about ten minutes of what McKenna described in testimony as just a "normal" and "laid-back" conversation regarding the neighborhood, the officers informed appellant that they were waiting on Officer Koch to arrive and "take a look" at appellant. According to McKenna, at that point, appellant expressed a desire to leave. McKenna told appellant that, technically, he was being detained for identification purposes and that he was not free to leave. The officers were then informed that Officer Koch was not available to make the identification. Two other officers had at this point arrived on the scene. The officers decided to take a Polaroid photograph of appellant. According to McKenna, appellant did not object to having his picture taken, and in fact asked if he could pose for the photograph. After the officers had taken appellant's photograph, they departed from the scene. McKenna testified that the entire encounter lasted approximately thirteen to fifteen minutes.

Later that same day, Detective Ellsworth showed the Polaroid photograph to Bishop and Koch. Appellant's name and the address "2706 East 13th Street" was printed at the bottom of the photograph. According to Bishop, Detective Ellsworth asked him "if this is who I thought it was, if this was Michael Carter." Based on the photograph, Bishop testified, he was able to identify appellant as the suspect who had sold him the cocaine. Koch testified that when Ellsworth showed him the photograph of appellant, he identified him as the individual that he had encountered sitting

4

on the steps of 2706 East 13th Street on the night of the chase. The photograph of appellant and the officers' positive identification based on the photograph subsequently served as the basis to arrest appellant.

## DISCUSSION

The district court denied appellant's motion to suppress the photographic evidence, concluding that the "officers had reasonable suspicion to stop and detain the defendant to take his photo to confirm he had been involved in a drug sale to another officer." The standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a *de novo* review of the court's application of search and seizure law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). At the suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 957 S.W.2d 889, 891 (Tex. Crim. App. 1999). Here, the district court made explicit findings of fact.

Appellant argues that, because there was no reasonable suspicion to support his detention, he was detained in violation of the United States and Texas Constitutions. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9; *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) (police officer may make "*Terry* stop" and "briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause") (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The State responds that when Officer McKenna detained appellant he reasonably suspected that appellant was the same person as the suspect from

5

the buy-bust operation because "he knew: (1) the appellant matched the physical description of the suspect; (2) the appellant resided at the address where the suspect was found on the night of the buy-bust; and (3) the appellant and suspect both had tattoos on their necks." According to the State, under the totality of the circumstances this knowledge provided reasonable suspicion to detain appellant for investigative purposes. *See Alabama v. White*, 496 U.S. 325, 330 (1990).

In the present case, we must affirm the district court's judgment regardless of whether there was error because any error would be harmless. The Texas Court of Criminal Appeals has held that all errors, with the exception of certain federal constitutional errors labeled as "structural," are subject to a harmless error analysis.[1] *See Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (superseded by statute on other grounds). The issue raised in appellant's appeal has not been labeled a "structural" error, and thus we must review the error accordingly. *See Silva v. State*, 64 S.W.3d 430, 433 (Tex. App.—San Antonio 2001, no pet.). Appellant's right to be free from an unreasonable seizure is of constitutional dimension; thus, if the record reveals constitutional error that is subject to the harmless error review, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); *see Silva*, 64 S.W.3d at 433-34; *Villalobos v. State*, 999 S.W.2d 132, 136 (Tex. App.—El Paso 1999, no pet.). Where constitutional error is shown, the burden is on the State to come forward with reasons why the error is harmless. *Villalobos*, 999

---

[1] "Structural" errors are constitutional violations affecting the "framework within which the trial proceeds, rather than simply an error in the trial process itself." *See Linton v. State*, 15 S.W.3d 615, 620 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Structural errors include: the total deprivation of the right to counsel at trial; a judge who was not impartial; unlawful exclusion of members of the defendant's race from a grand jury; and the right to self-representation at trial. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991).

S.W.2d at 136 (citing *Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, no pet.)).

Here, the State argues that, because Detective Bishop positively identified appellant as the suspect who sold him the cocaine at the suppression hearing, the photograph or any testimony based on it, even if obtained as the result of an unlawful detention, did not contribute to appellant's conviction. We agree. On redirect examination, Bishop testified:

Q: [State's attorney] Detective, I just have a couple of questions. First of all, when you conduct these operations—I have asked you this before, but I just want to clarify. When you conduct these operations do you view them with the specific intent to observe the individual you purchase the cocaine from with a specific purpose of being able to identify him at a later time?

A: Yes, sir.

Q: Do you see the individual in the courtroom today that you bought the cocaine from?

A: Yes, sir, I do.

Q: Could you point him out and describe what he is wearing?

A: Michael Carter. He is going to be in the jail uniform right there, the dark blue one.

. . .

Q: And are you basing that identification on your memory of when you purchased the cocaine from him or the photograph?

A: Memory of him and, like I said, the tattoo on his neck.

Q: Did you see the tattoo on his neck that night?

A: Yes, sir.

In written findings of fact, the district court found that on the night of the buy-bust operation "[t]he defendant placed his head in the window to speak to [Bishop] and [Bishop] got a good look at the defendant," and that Bishop "I.D.'d the defendant in open court as the person from whom he had bought the cocaine." The trial court is the sole trier of fact and judge of the weight and credibility to be given a witness's testimony. *Ballard*, 987 S.W.2d at 891.

The record reflects that, in addition to his motion to suppress photographic evidence, appellant made a motion to suppress the in-court identification of appellant by the officers. The district court overruled this motion.[2] Although the district court did not expressly find that Bishop's in-court identification of appellant was untainted by any police misconduct, Bishop's testimony supports the conclusion that his in-court identification of appellant was independent of any viewing of the photograph. Thus, even if the unlawful detention ultimately resulted in an illegal arrest, Bishop's ability to make a positive in-court identification of appellant as the person who sold him the cocaine cannot be suppressed. *See United States v. Crews*, 445 U.S. 463, 471 (1980) (concluding that in-court identification of defendant not suppressible if untainted by violation of defendant's Fourth Amendment rights); *see also Pichon v. State*, 683 S.W.2d 422, 426 (Tex. Crim. App. 1984) ("[A] defendant's face cannot be a suppressible fruit of an illegal arrest.")

Although the photograph was used by Bishop and Koch to positively identify appellant as the suspect, and their positive identification subsequently resulted in appellant's arrest, the admissibility of that evidence was not necessary for the State to prosecute appellant. This is true notwithstanding any question that might arise regarding the reasonableness of the investigative

---

[2] Appellant does not appeal this ruling.

8

detention. The record reveals that, even without the photograph or identification testimony based on the photograph, there remains Detective Bishop's in-court identification of appellant as the person who sold him the cocaine. The district court had this evidence before it when it accepted appellant's guilty plea. Thus, we find beyond a reasonable doubt that the district court's error did not contribute to the judgment on the plea of guilty because it did not have a substantial effect on the appellant's decision to plead guilty. *See Sanchez v. State*, 98 S.W.3d 349, 357-58 (Tex. App.—Houston [1st Dist.] 2003, pet. filed) ("[O]ur focus in determining harm is on whether the error had [an] . . . effect on appellant's decision to plead guilty in the first place."); *cf. Villalobos*, 999 S.W.2d at 136 (constitutional error not harmless because cannot find beyond reasonable doubt that error did not substantially affect appellant's decision to plead guilty). We overrule appellant's point of error.

## CONCLUSION

Having overruled appellant's point of error, we affirm the district court's judgment on the plea of guilty and sustain appellant's conviction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: August 14, 2003

Do Not Publish

9