Opinion issued October 16, 2003








     









In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01050-CR




MICHAEL TODD NIKLAS, Appellant

V.

THE STATE OF TEXAS, Appellee






On Appeal from the 178thDistrict Court 
Harris County, Texas
Trial Court Cause No. 921,626






MEMORANDUM OPINION

          A jury found appellant, Michael Todd Niklas, guilty of injury to a child and
assessed his punishment at 25 years’ confinement. In one point of error, appellant
challenges the legal and factual sufficiency of the evidence to support his conviction. 
          We affirm.
Background
          Two-and-one-half-year-old Karleigh Hampton died on July 16, 2000. At trial,
the State presented evidence supporting its theory that appellant caused Karleigh’s
death by either shaking or suffocating the toddler. The defense argued that the
evidence presented by the State showed that the cause of Karleigh’s death was
inconclusive at best.
          Karleigh’s mother, Chrystal Hampton, testified at trial. At the time of
Karleigh’s death, Chrystal and appellant were engaged to be married and lived
together along with Chrystal’s two daughter’s, Brianna and Karleigh, and Chrystal
and appellant’s infant son, Ryan. Chrystal testified that appellant was a father figure
to Brianna and Karleigh, and that they called him “dad.” 
          Chrystal characterized Karleigh as “a very picky eater.” Chrystal testified that
Karleigh’s refusal to eat sometimes annoyed appellant. On the evening of July 12,
2000, Karleigh refused to eat her dinner; she held her food in her mouth without
chewing it and “whined.” Eventually, Karleigh spit out the food she had in her
mouth. Appellant told Karleigh to go to bed, and she began to cry. 
          As Chrystal washed the dishes, appellant went into Karleigh’s room to get her
ready for bed. Two to five minutes later, Chrystal heard appellant call her name. 
Chrytal ran toward the bedroom and saw appellant standing in the doorway holding
Karleigh. Karleigh’s head had fallen backward and her mouth was gaping open. 
Chrystal took Karleigh from appellant. Chrystal testified that Karleigh’s body was
“totally limp.” When Chrystal told appellant to call for help, he became confused and
stated that he did not know what to do. Chrystal took Karleigh next door to Barbara
and Clayton Call’s home. 
          The Calls alternated administering CPR to Karleigh until the ambulance
arrived. Paramedic Ron Duncan testified that when he arrived at the scene, he
observed Clayton Call properly administering CPR. Duncan testified that he noted
numerous bruises on Karleigh. Although he acknowledged that bruises are common
on toddlers, Duncan found the amount and locations of the bruises on Karleigh to be
unusual. Specifically, he noted bruises on Karleigh’s abdomen and right temple. 
          Harris County Deputy Constable Jonathan Foster was the first law enforcement
officer to arrive at the scene. According to Deputy Foster, he immediately noticed
bruises on Karleigh’s “mid-section.” After securing the area and initiating interviews,
Deputy Foster approached appellant for information. Appellant told Deputy Foster
that Karleigh had refused to eat her dinner and had a “temper tantrum.” Appellant
told Deputy Foster that he took Karleigh to the bedroom to put her to bed and that
Karleigh began crying so loud that she passed out. 
          Corporal E.S. Spiller of the Harris County Constable’s Office was the next to
arrive at the scene. Corporal Spiller testified that he immediately noticed the bruise
on Karleigh’s abdomen; he thought it seemed “peculiar.” Corporal Spiller also noted
the bruise on Karleigh’s temple. Upon questioning, appellant told Corporal Spiller
that Karleigh had been “throwing a temper tantrum like she always does.” Appellant
also told Corporal Spiller that Chrystal had asked him to put Karleigh to bed. 
Because Karleigh would not stop crying, appellant disciplined her. Appellant said
that Karleigh was standing in front of him crying when she collapsed and hit her head
on a toy box. 
          Chrystal initially went to the hospital with Karleigh, but was later brought to
the police station for questioning, along with appellant. Detective Mark Reynolds
with the Homicide Division of the Harris County Sheriff’s Office interviewed both
Chrystal and appellant. Detective Reynolds testified that after speaking with
Chrystal, he was convinced that she had not caused the injuries to Karleigh. 
          Appellant supplied Detective Reynolds with a voluntary, written statement,
which was introduced into evidence. In the statement, appellant explained that once
he and Karleigh were in her bedroom, she began throwing herself repeatedly down
on the floor to the point she lost her breath. Appellant then asked Karleigh if she
wanted him “to get the belt.” Karleigh began screaming and crying, and continued
to throw herself on the floor. Appellant picked Karleigh up by her shoulders. 
Appellant then tried to stand Karleigh up, but she had gone limp and her eyes had
rolled back into her head. When appellant released Karleigh, she fell and hit her head
on a plastic toy box. 
          Detective Reynolds testified that appellant later admitted in a videotaped
interview that he had shaken or “jolted” Karleigh approximately three times to get her
attention. Detective Reynolds also testified that appellant explained the bruising on
both sides of Karleigh’s face by stating that Karleigh had hit her head on a wall and
then bounced to another wall hitting the opposite side of her face. Appellant offered
additional explanations for Karleigh’s bruises by telling the detectives that Karleigh
was clumsy and that the family dog had knocked her down.
          Assistant Medical Examiner Dr. Paul Shrode performed Karleigh’s autopsy and
documented bruises to various parts of Karleigh’s body, which he considered
unusual. Dr. Shrode testified that he ruled out any natural causes for Karleigh’s death
and concluded that the child’s death was a homicide. Dr. Shrode testified that
Karleigh’s brain was swollen, which was caused by lack of oxygen. He determined
that the swelling of Karleigh’s brain was not caused by Karleigh hitting her head on
the plastic toy box or from crying to the point of passing out; rather, in Dr. Shrode’s
opinion, the swelling resulted from either suffocation or from what is commonly
referred to as “shaken baby syndrome.” 
          Dr. Hannes Vogel, an associate professor of pathology and pediatrics and
director of neuropathology at Stanford Medical School, also testified for the State
concerning Karleigh’s injuries. After reviewing Karleigh’s medical records, tissue
slides, autopsy results, and various photographs, Dr. Vogel concluded that Karleigh’s
death was the result of either violent shaking or suffocation. Dr. Vogel testified that,
although not all of the indicators of shaken baby syndrome were present in Karleigh’s
case, he would not expect that they would be due to Karleigh’s age and development. 
Dr. Vogel also testified that the swelling of Karleigh’s brain, in conjunction with the
bruises to Karleigh’s face, were consistent with suffocation. 
Discussion
A.      Construing Appellant’s Issue on Appeal
          In his sole point of error, appellant contends that the trial court erred in denying
his motion for instructed verdict. We review a complaint that the trial court erred in
denying a motion for instructed verdict as a challenge to the legal, not factual,
sufficiency of the evidence. See Williams v. State, 937 S.W.2d 479, 482. (Tex. Crim.
App. 1996) (citing Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)); see
also Youens v. State, 988 S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no
pet.). However, in support of his sole point of error, appellant argues that the
evidence was legally and factually insufficient. Fairly considering the argument
supporting appellant’s challenge, we construe appellant’s point of error as a challenge
to the legal and factual sufficiency of the evidence. See Tex. R. App. P. 38.1(e) (“The
statement of an issue or point will be treated as covering every subsidiary question
that is fairly included.”); see also Sanchez v. State, 98 S.W.3d 349, 355 (Tex.
App.—Houston [1st Dist.] 2003, pet. filed). 
B.      Injury to a Child
          A person commits the first-degree felony offense of injury to a child if he
intentionally or knowingly by act or omission, causes serious bodily injury to a child. 
Tex. Pen. Code Ann. § 22.04(a)(1), (c)(1), (e) (Vernon 2003). Serious bodily injury
is defined in the Penal Code as, “bodily injury that creates a substantial risk of death
or that causes death, serious permanent disfigurement, or protracted loss or
impairment of the function of any bodily member or organ.” Tex. Pen. Code Ann.
§ 1.07(46) (Vernon 2003). In a four-paragraph indictment, the State charged
appellant with intentionally and knowingly causing Karleigh serious bodily injury 
by either suffocating her, shaking her, and/or by “a manner and means unknown.” 
The jury found appellant guilty as charged in the indictment.



C.      Sufficiency of the Evidence
          In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational fact finder could have found the
crime’s essential elements beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000). Viewed in the light most favorable to the verdict, the
evidence in this case showed as follows: (1) appellant was alone with Karleigh when
she first began showing signs of injury; (2) appellant admitted to disciplining and
shaking Karleigh; (3) medical and law enforcement witnesses testified that they were
concerned by the numerous bruises on Karleigh’s body and found the bruising to be
unusual, even for a toddler; (4) Drs. Shrode and Vogel both concluded that Karleigh’s
death was not accidental, but that her fatal injuries were inflicted by someone; (5) Dr.
Shrode stated that the swelling of Karleigh’s brain was a result of either suffocation
or shaking; (6) Dr. Vogel testified he also concluded that Karleigh’s death resulted
from either shaking or suffocation; and (7) both doctors stated that Karleigh’s facial
bruising was consistent with a hand being placed over the child’s face. 
          We conclude that the State’s evidence was such that a reasonable juror could
have found that appellant knowingly or intentionally inflicted serious bodily injury
on Karleigh. Viewing the evidence in the light most favorable to the verdict, we hold
the evidence to be legally sufficient. 
          We next turn to the factual sufficiency of the evidence. In a factual-sufficiency
review, we examine all of the evidence neutrally and ask whether proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination or so greatly
outweighed by contrary proof as to indicate that a manifest injustice has occurred. 
See Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003). We review the
evidence weighed by the jury that tends to prove the existence of the elemental fact
in dispute and compare it with the evidence that tends to disprove that fact. Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). But we must avoid substituting
our judgment for that of the factfinder. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000). The factfinder is the sole judge of the weight and credibility of witness
testimony. Id. 
          In our review, we must consider the most important evidence that the appellant
claims undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). In this regard, appellant cites Chrystal’s testimony that she thought
Barbara Call injured Karleigh when Barbara performed CPR on the child. Appellant
points out that when Dr. Shrode was asked on cross-examination whether “hitting the
floor with the side of the face” could cause a concussion, the doctor acknowledged
that “it’s possible.” In addition, appellant cites Dr. Shrode’s testimony that the doctor
did not know what caused the “contusions” on Karleigh. Appellant also points out
that Dr. Shrode conceded on cross-examination that the oval bruise on Karleigh’s
abdomen was “perhaps” consistent with the defense’s theory that the family dog
stepped on Karleigh, causing the bruise. 
          Contrary to appellant’s contentions, the State presented evidence indicating
that these events did not cause Karleigh’s fatal brain injury. Dr. Vogel testified that
Karleigh’s brain injury could not have been caused by improperly administered CPR,
even under a worst case scenario. Paramedic Ron Duncan stated that it is difficult to
injure children by administering CPR because they are “pliable.” Several of the
State’s witnesses acknowledged improperly performed CPR can cause injury, but that
the most probable injuries would be bruising or broken ribs, injuries that did not
cause Karleigh’s death.
          As the State points out in its briefing, even if Karleigh’s abdominal bruise was
caused by the family dog, the record is replete with testimony that Karleigh had
numerous bruises on her body, which were of concern to the law enforcement
officers, paramedic Ron Duncan, and Dr. Shrode. Moreover, the State presented
evidence that Karleigh’s brain injury was the result of either being shaken or
suffocated. Such was the conclusion of both Drs. Shrode and Vogel.
          The State also presented evidence to rebut the defense’s suggestion that
Karleigh’s injuries were caused by recent falls or concussions. Dr. Shrode testified
that it was not reasonable to believe that Karleigh’s brain injury was caused by her
falling from a standing position and hitting her head on a plastic toy box. When
asked whether Karleigh’s brain injury could have been caused from falling and hitting
her head on the toy box, Dr. Vogel stated, “Absolutely not.” 
          The defense elicited testimony from Chrystal that Karleigh had fallen from the
ladder on her bunk bed. However, Dr. Vogel testified that the type of brain injury
seen in Karleigh is not consistent with falling from a bunk-bed ladder; rather, the type
of force required to inflict the degree of injury seen in Karleigh would be a “severe
car accident or [a] fall from a height of two or three stories.” Dr. Vogel testified that
such force could “absolutely” be found in shaking, especially from an adult. Dr.
Vogel stated that only two scenarios—shaking and suffocation—could explain
Karleigh’s brain injury. Finally, both doctors concluded that the fatal injuries
inflicted upon Karleigh were not accidental, but were inflicted by someone.
          We conclude that the State’s proof that appellant knowingly or intentionally
inflicted serious bodily injury on Karleigh is not so obviously weak that it undermines
the confidence in the jury’s verdict; neither is the State’s proof greatly outweighed
by contrary proof. See Zuliani, 97 S.W.3d at 593-94. Viewing all of the evidence in
a neutral light, we hold the evidence to be factually sufficient.
          Appellant’s sole point of error is overruled.
Conclusion
          We affirm the judgment of the trial court. 



 
Laura Carter Higley
                                                             Justice

Panel consists of Justices Hedges, Nuchia, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).