

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00319-CR

_____

DAVID LIONEL WILLIAMS, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1836708

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

A jury convicted Appellant David Lionel Williams of the offense of continuous sexual abuse of a young child. *See* Tex. Penal Code Ann. § 21.02(b). The jury assessed Appellant's punishment at imprisonment for thirty-five years in the Institutional Division of the Texas Department of Criminal Justice. The trial court's judgment imposed the jury's sentence.

Appellant raises two points. First, he contends that the trial court instructed the jury improperly on vicinage and that the instruction on venue should have applied a beyond-a-reasonable-doubt standard because, he claims, venue is an element of the offense. But Appellant concedes that Texas law is directly contrary to his argument. We agree and hold that the trial court's venue instruction was correct. In his second point, Appellant argues that the trial court erred by admitting into evidence a note in which the complainant described the abuse she suffered. We will assume that the trial court erred by admitting the note, but we conclude that this error was harmless. We therefore affirm.

## II. Factual Background

The complainant is related to Appellant. The complainant described acts of abuse that were committed while living in an apartment complex in Tarrant County and that grew in severity until Appellant digitally penetrated her sexual organ. The most intense period of abuse occurred during a summer when the complainant was

2

eleven or twelve. Though Appellant's later acts of abuse were less intense than those that occurred during that summer, the abuse did not end until the complainant was fourteen.

The complainant did not immediately disclose the abuse. When the complainant was seventeen, she was involved in an altercation with her mother that resulted in a call to the police. While talking to the responding officer about the altercation, the complainant revealed the prior abuse by showing the officer a note that she had typed into her phone several months earlier that described Appellant's acts of abuse.

Although he minimized the extent of the abuse, Appellant admitted that he had engaged in inappropriate conduct by touching the complainant "around" her genitals. Appellant admitted inappropriate conduct not only to a police officer during a recorded interview but also to a Child Protective Services investigator.

Though Appellant conceded inappropriate conduct, there was one topic of controversy. The complainant was questioned at trial about whether the abuse might have actually occurred at an earlier age than she had testified to and at a time when the family was on an extended visit to the Philippines. The complainant explained why events showed that the abuse did not occur in the Philippines and remained steadfast that the abuse had occurred in Tarrant County. Countering the complainant's testimony regarding where the abuse had occurred, Appellant stated

3

during the recorded interview with police that his only conscious memory of abusing the complainant was while the family was in the Philippines.

Because of the testimony about where the offense had occurred, the trial court gave the jury an instruction on venue that is the focus of one of Appellant's points on appeal. As noted, the jury found Appellant guilty of continuous sexual abuse of a young child. However, the jury acquitted Appellant of two counts of child indecency by contact. This appeal followed.

### III. Analysis

**A. Appellant's first point: We reject Appellant's contention that the trial court gave an erroneous instruction on venue.**

In view of his admissions, Appellant resorted to a last-ditch defense of claiming that he had abused the complainant in the Philippines. He argued that the Sixth Amendment to the United States Constitution places the "vicinage" for his offense only in the county where the offense occurred and that the venue instruction given exceeded that limit. Also, to increase the State's burden of proving where the offense had occurred, he argues that venue was an element of the offense and thus had to be proven beyond a reasonable doubt as opposed to the preponderance-of-the-evidence burden applied in the given instruction. As Appellant concedes, he is attempting to import a principle from federal law into Texas jurisprudence when both Texas and federal courts have held that the principle does not apply to state courts. To counter this state of affairs, he argues that the United States Supreme Court has signaled that

4

the current state of the law is changing. We do not see any signal that portends the change that Appellant argues is about to occur. For these reasons, we will overrule Appellant's first point.

### 1. We set forth the venue instruction and Appellant's objection to it.

As noted, Appellant contended that the evidence raised the question of whether he had committed the acts of abuse against the complainant in Tarrant County or in the Philippines. The trial court gave the jury the following instruction on the question of venue:

> An indictment may allege the offense or offenses were committed in the county where the prosecution is carried on. To sustain the allegation of venue, it shall only be necessary to prove by [a] preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue. Proof of venue must be demonstrated by either direct or circumstantial evidence. "Venue," as applied to criminal cases, means the place in which the prosecution is to begin.
>
> The offenses of continuous sexual abuse of a child, aggravated sexual assault of a child, and indecency by contact may be prosecuted in the county in which an element of the offense or offenses was committed, in which the victim resides, or in which the defendant resides if the offense or offenses involved a victim younger than 18 years of age, and the offense or offenses resulted in bodily injury to a child younger than 18 years of age.[1]

---

[1]The trial court's instruction on the venue for the offense of continuous sexual abuse of a young child appears proper. As we have held,

> The offenses of continuous sexual abuse of a child younger than fourteen and indecency with a child by contact may be prosecuted in the county: (1) in which an element of the offense was committed[,] (2) in which the defendant is apprehended[,] (3) in which the victim resides[,]

Appellant appeared to acknowledge that the instruction correctly reflected Texas law. Appellant objected nonetheless based on the contention that the instruction violated his constitutional rights. If we understand the objection, it had the following bases:

- First, the objection outlined the Vicinage Clause of the Sixth Amendment to the United States Constitution. Although acknowledging both federal and Texas authority holding that the Vicinage Clause does not apply to the states, Appellant argued that the plain language of the Vicinage Clause "is saying that the trial has to occur in the state and district where the -- where the crime shall have been committed." On the basis of the Vicinage Clause, Appellant argued that the venue statute upon which the trial court based its instruction permitted Appellant to be tried outside the only location permitted by the Sixth Amendment, i.e., the county where the offense was committed.

- Appellant next argued that venue is an element of the offense and that due process requires all elements of an offense to be proved beyond a reasonable doubt—a standard contrary to Texas law, which Appellant acknowledged requires proof by only a preponderance of the evidence. Appellant again acknowledged that federal and Texas law does not support his argument but that he had "to raise these arguments now so that they're not waived in the future in the event that he[ was] convicted . . . and the law does change."

- Appellant finally lodged a specific objection to the charge: "I would object to the venue instruction, and I believe that it's an essential

---

or (4) in which the defendant resides. Tex. Code Crim. Proc. Ann. art. 13.075.

*Jones v. State*, No. 02-19-00277-CR, 2020 WL 2071952, at *3 (Tex. App.—Fort Worth Apr. 30, 2020, pet. ref'd) (mem. op., not designated for publication) (citing statute that has since been repealed but that applied at the time that Appellant committed the offense).

6

element to the charge[] and that . . . it should be proven beyond a reasonable doubt and not just a preponderance."

Appellant's brief now summarizes his claim as follows: "Appellant contends that the trial court abused its discretion in failing to grant his request to include an instruction that vicinage must be proven beyond a reasonable doubt under Article Three, Section Two of the Sixth Amendment to the United States Constitution within the charge on guilt." He specifically attacks the venue instruction because it used a preponderance-of-the-evidence standard to establish vicinage.

### 2. We set forth the standard of review for charge error.

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Preservation of charge error does not become an issue until we assess harm." *Thanh Cuong Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id.* at 744.

### 3. We explain the Vicinage Clause that Appellant invokes.

The Vicinage Clause is found in the Sixth Amendment to the United States Constitution and states that "the accused shall enjoy the right to a speedy and public trial[] by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI.

Because it is a seldom-encountered concept in Texas law, we include the history of the Vicinage Clause as recently outlined by the United States Supreme Court:

> [T]he relevant starting point[ of the history of the Vicinage Clause] is the common-law "vicinage" right, which presumptively entitled defendants to a jury of the "neighbo[]rhood" where the crime was allegedly committed. W. Blackstone, Commentaries on the Laws of England 344 (1769) (Blackstone). As a practical matter, this right imposed a venue requirement: trials needed to be held at the location where "the matter of fact issuable" allegedly occurred to allow the "Inhabitants whereof" to serve on the jury. 1 E. Coke, Institutes of the Laws of England § 193, at 125 (1628) (Coke).
>
> Both of these requirements were well settled by the founding[ of the United States]. [*See*], *e.g.*, *Rex v. Harris*, 3 Burr. 1330, 1334, 97 Eng. Rep. 858, 860 (K. B. 1762) (Wilmot, J.) (opining that there was "no rule better established" than "'that all causes shall be tried in the county, and by the neighbo[]rhood of the place, where the fact is committed'"). [Petitioner] contends, however, that the Constitution not only incorporated this right but "elevated" it "to an even higher stature in American law[]" and that this enhanced right favors his preferred remedy. . . . The historical record, however, does not support this argument.
>
> There is no question that the founding generation enthusiastically embraced the vicinage right and wielded it "as a political argument of the Revolution." Prior to the Revolution, Parliament enacted measures to circumvent local trials before colonial juries, most notably by authorizing trials in England for both British soldiers charged with murdering colonists and colonists accused of treason. The Continental Congress and colonial legislatures forcefully objected to trials in England before loyalist juries, characterizing the practice as an affront to the existing "common law of England, and more especially to the great and inestimable privilege of being tried by . . . peers of the vicinage." The Declaration of Independence also denounced these laws, under which, it said, British soldiers were "protect[ed] . . . by a mock [t]rial" and colonists were "transport[ed] . . . beyond [s]eas to be tried for pretended offences." As [s]tates declared independence, most incorporated some

8

form of a venue or [V]icinage [C]lause in their governing documents, and none of these provisions specified a particular remedy for violations.

The common-law vicinage right, both as a jury requirement and as a proxy for venue, remained prominent during debates over the ratification of the Constitution. As originally proposed, the Constitution contained only the Venue Clause, which, as noted, says nothing about jury composition. Appealing to "ancient common law," Anti-Federalists objected to this omission. Federalists responded that Congress could secure the vicinage right by statute, analogizing to common law, where "the preservation of this right [was] in the hands of Parliament."

After the ratification of the Constitution, Congress yielded in part to the Anti-Federalists' argument and included a vicinage right in the Sixth Amendment. James Madison's initial draft of the Amendment required a jury "of the vicinage," 1 Annals of Cong. 435 (1789), but Congress amended that language so that it guaranteed a jury from the State of the crime and from any smaller judicial districts that Congress chose to create.

*Smith v. United States*, 599 U.S. 236, 246–48, 143 S. Ct. 1594, 1604–06 (2023) (footnotes omitted).

The Vicinage Clause differs from the Venue Clause—also contained in the Sixth Amendment—"in two ways: it concerns jury composition, not the place where a trial may be held, and it narrows the place where trial is permissible by specifying that a jury must be drawn from 'the State *and district* wherein the crime shall have been committed.'" *Id.* at 245, 143 S. Ct. at 1603–04 (quoting U.S. Const. amend. VI).

The Texas Constitution has no provision equivalent to the Vicinage Clause, and Texas defendants have no equivalent state constitutional right to those created by the Vicinage Clause:

9

Criminal defendants also have no state constitutional right to trial in the vicinage. *See Cox*[ *v. State*, 8 Tex. App. 254], 285 [(1880)]; *see also* 41 Dix & Dawson, *supra*, § 25.17. The Texas Constitution grants criminal defendants the right to a trial by an impartial jury, without specifying that the trial must be held in any particular county. *See* Tex. Const. art. 1, § 10. The constitution further provides that "[t]he power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the [Texas] Legislature shall pass laws for that purpose." *Id.* art. III, § 45.

*Garza v. State*, 974 S.W.2d 251, 259 (Tex. App.—San Antonio 1998, pet. ref'd).

### 4. Both the Court of Criminal Appeals and the Fifth Circuit Court of Appeals have held that the Vicinage Clause is inapplicable to Texas state courts.

Appellant's claim that he had the right to assert the protection of the Vicinage Clause when he was prosecuted in a Texas state court ends with the Court of Criminal Appeals's holding that this federal right is not applicable to him:

Furthermore, we now expressly hold that the federal [V]icinage [C]lause is inapplicable in Texas state courts. *See Cook v. Morrill*, 783 F.2d 593, 595 (5th Cir. 1986) ("[I]t is the rule in this circuit that the [S]ixth [A]mendment right of vicinage does not apply to state prosecutions."); [*State v.*] *Blankenship*, 170 S.W.3d [676,] 683 [(Tex. App.—Austin 2005, pets. ref'd)] ("Neither federal nor state authorities" require [V]icinage [C]lause's application in state prosecutions[] (internal citations omitted)[)]; *Garza . . .*, 974 S.W.2d [at] 259 . . . (same); *Bath v. State*, 951 S.W.2d 11, 19 (Tex. App.—Corpus Christi[–Edinburg] 1997, pet. ref'd) (same). As the Court of Appeals for the Fifth Circuit explained, the [V]icinage [C]lause is not "fundamental and essential to a fair trial" and, therefore, is not a federal constitutional right that is binding on state courts. *Cook*, 783 F.2d at 595. Although other state and federal courts are split on the issue, a majority of those courts that have considered the issue have held that the vicinage provision is inapplicable to the states. *See Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004) (collecting cases); *Price v. Superior Court*, . . . 25 P.3d 618, 629 ([Cal.] 2001) ("Vicinage is not a right that is fundamental and essential to the purpose of the constitutional right to jury trial, the test for incorporation from the

Fourteenth Amendment suggested in *Duncan* and *Williams* "[] ([first] citing *Williams v. Florida*, 399 U.S. 78, 86, 90 S. Ct. 1893, [1898] (1970)[;] and [then citing] *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, [1447] (1968))[)]. We agree with the majority view that the federal Constitution's [V]icinage [C]lause does not apply to state prosecutions. Our conclusion is logically consistent with the court of appeals's determination in this case that venue error is non[]constitutional and subject to harm analysis under Rule of Appellate Procedure 44.2(b). *See Schmutz*[ *v. State*, No. 06-12-00059-CR], 2013 WL 1188994, at *3 [(Tex. App.—Texarkana Mar. 22, 2013) (mem. op., not designated for publication), *aff'd*, 440 S.W.3d 29 (Tex. Crim. App. 2014)]; *see also State v. Paiz*, 817 S.W.2d 84, 85 (Tex. Crim. App. 1991); *Price*, . . . 25 P.3d at 628–34.

*Schmutz*, 440 S.W.3d at 36.

*Schmutz* cited the Fifth Circuit's holding in *Cook*. There, the Fifth Circuit concluded that if presented with the issue, the United States Supreme Court would hold that the right of vicinage does not apply to the states:

The United States Supreme Court has yet to decide whether the venue provision of the [S]ixth [A]mendment applies to the states; however, the Fifth Circuit has previously decided that it does not. In the only Fifth Circuit case addressing the question, *Martin v. Beto*, 397 F.2d 741 (5th Cir. 1968), the defendant sought a writ of habeas corpus because the state trial court had ordered venue changed over the defendant's objection. We affirmed the federal district court's denial of the writ and stated[,] "That part of the Sixth Amendment which gives the accused the right to a trial 'by an impartial jury of the State and district wherein the crime shall have been committed' has not thus far been held applicable to the [s]tates." *Id.* at 748 (citing *United States ex rel. Chatary v. Nailon*, 211 F. Supp. 676, 678 (E.D. Pa. 1962)). Thus, it is the rule in this circuit that the [S]ixth [A]mendment right of vicinage does not apply to state prosecutions. Were we inclined to overrule the holding in *Martin v. Beto*, we could not, for in the Fifth Circuit one panel may not overrule the holding of a previous panel. *United States v. Albert*, 675 F.2d 712, 713 (5th Cir. 1982).

11

We believe that the court in *Martin v. Beto* correctly decided the issue and that the Supreme Court, if it is ever faced with the issue, would hold that the right of vicinage does not apply to the states. The Supreme Court has applied to the states only those provisions of the [S]ixth [A]mendment that the Court finds "fundamental and essential to a fair trial." *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 795 . . . (1963) (quoting *Betts v. Brady*, 316 U.S. 455, [465,] 62 S. Ct. 1252, [1257] (1942)[, *overruled by Gideon*, 372 U.S. at 339, 345, 83 S. Ct. at 794, 797]). The right to a trial in the district where the defendant committed the crime is not one of those rights which rises to the level of being "fundamental and essential to a fair trial."

*Cook*, 783 F.2d at 595–96.

Appellant tries to argue around the holdings quoted by contending that the United States Supreme Court has brought the Vicinage Clause "front and center regarding its [c]onstitutional viability," and he provides an extended discussion of the Court's recent opinion in *Smith*, 599 U.S. at 246–48, 143 S. Ct. at 1604–06. Apparently, Appellant views *Smith* as a signal that the Supreme Court is about to hold that the Vicinage Clause applies to the states. Nothing in *Smith* carries this suggestion.

*Smith* dealt with whether double jeopardy barred a retrial because of an error regarding where the trial was held. 599 U.S. at 241–54, 143 S. Ct. at 1601–09. As the Court summarized its holding,

When a conviction is reversed because of a trial error, this Court has long allowed retrial in nearly all circumstances. We consider in this case whether the Constitution requires a different outcome when a conviction is reversed because the prosecution occurred in the wrong venue and before a jury drawn from the wrong location. We hold that it does not.

12

*Id.* at 239, 143 S. Ct. at 1600. Nothing in this holding contains the tea leaves that Appellant argues we should read, nor does it suggest that the Court of Criminal Appeals's holding—which binds us—is wrong.

> **5. We set forth the principles of venue in criminal cases under Texas law that Appellant argues are unconstitutional under the Sixth Amendment.**

Beyond the holdings that the Vicinage Clause does not apply to the states, both Texas and federal law are contrary to Appellant's argument that venue or venue-like concepts are elements of an offense that must be proven to the same level of proof that applies to other elements of an offense. The Court of Criminal Appeals has rejected Appellant's premise that venue is an element of an offense and must be proven to the same standard as the element of an offense:

> As [venue] is not a "criminative fact," venue is not an "element of the offense" under Texas law. *See Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899 (Tex. Crim. App. 19[9]0); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [[Panel Op.]] 1981) . . . ; *Edwards v. State*, 427 S.W.2d 629, 636 (Tex. Crim. App. 1968). An "element" is a fact that is legally required for a fact[]finder to convict a person of a substantive offense. *See Jackson*[ *v. Virginia*], 443 U.S. [307,] 315, 99 S. Ct. 2781[, 2787 (1979)] (proof beyond a reasonable doubt required of "every fact necessary to constitute the crime with which he is charged"[] (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072 . . . (1970))[)]; *see also* Tex. Penal Code Ann. § 1.07 (defining "elements of offense" to include conduct, result, and culpability elements, as well as "negation of any exception"). Professors Dix and Schmolesky have explained that the remedy for venue error is properly distinguished from that for insufficient evidence:
>
> > If it can be determined that the basis of the acquittal is the failure to prove venue, reprosecution should not be barred because an appellate reversal for failure to prove venue is

> merely a finding concerning the geographic location where the case may be tried, and it is not a finding of insufficient evidence of a required element of the offense or even a finding that the court lacked jurisdiction.
>
> 40 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 5:60 (3d ed. 2013). Although venue must be proven "at trial to establish a defendant's [legal] status," that "does not convert" venue into an "element[] of the proscribed offense[]." *State v. Mason*, 980 S.W.2d 635, 641 (Tex. Crim. App. 1998) (citing venue and jurisdiction as separate from elements of offense).
>
> Furthermore, unlike elements of an offense that must be proven beyond a reasonable doubt under *Jackson*, the Texas Rules of Appellate Procedure permit appellate courts to presume that venue was proven unless venue is "disputed in the trial court" or "the record affirmatively shows the contrary." *Compare* Tex. R. App. P. 44.2(c)(1) (permitting appellate presumption on proof of venue), *with Jackson*, 443 U.S. at 316, 99 S. Ct. [at 2787] (noting Due Process [C]lause requires evidentiary review for sufficiency of proof "of every element of the offense").

*Schmutz*, 440 S.W.3d at 34–35.

And the Code of Criminal Procedure article in effect at the time of Appellant's trial provided that venue may be proven by a preponderance of the evidence. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 2(C), 1973 Tex. Gen. Laws 885, 978, *repealed by* Act of May 19, 2023, 88th Leg., R.S., ch. 765, § 3.001(5) (current version at Tex. Code Crim. Proc. Ann. art. 13A.002(b)) ("An allegation of venue under this article may be sustained if the attorney representing the [S]tate proves by a preponderance of the evidence that, based on the facts in the case, the county in which the prosecution is conducted has venue.").

14

Beyond Texas law, Appellant's argument that venue should be considered an element of the offense and subject to a beyond-a-reasonable-doubt standard of proof also appears contrary to federal procedure:

> The burden of proving that the alleged crime occurred in the district of trial is squarely on the prosecution, and venue must be proven for each count charged against a defendant. Venue is not an essential fact constituting the offense charged, and so it must be proved only by a preponderance of the evidence, rather than beyond a reasonable doubt.

11 Anne E. Melley et al., Cyclopedia of Federal Procedure § 39:150 (3d ed. May 2025 update) (footnotes omitted). Thus, as Appellant acknowledges, Texas law stands directly contrary to his argument. But as he fails to acknowledge, so does federal law.

Finally, the rationale of the Supreme Court in *Smith* not only contraindicates the implication that Appellant would draw from it but also undermines his argument that *Smith* signals a change on the question of whether vicinage and venue are elements of the offense that require proof beyond a reasonable doubt. If it is his suggestion that *Smith* points to a conclusion that vicinage and venue-like issues are elements of the offense, the Supreme Court's rationale for why a violation of the Vicinage Clause does not bar a retrial holds no support for that argument. *Smith* supported its holding by noting that "retrial is permissible when a trial terminates 'on a basis unrelated to factual guilt or innocence of the offence of which [the defendant] is accused.'" 599 U.S. at 253, 143 S. Ct. at 1608 (quoting *United States v. Scott*, 437 U.S. 82, 99, 98 S. Ct. 2187, 2198 (1978)). The opinion continued that "reversal of a conviction based on a violation of the Venue or Vicinage Clauses, even when styled as

15

a 'judgment of acquittal' under Rule 29, plainly does not resolve 'the bottom-line question of 'criminal culpability.'" *Id.* (quoting *Evans v. Michigan*, 568 U.S. 313, 324 n.6, 133 S. Ct. 1069, 1078 n.6 (2013)). Thus, even if the Vicinage Clause applied to the states, federal law would not support the objection that Appellant made to the trial court's instruction—that venue-like issues are elements of the offense mandating a beyond-a-reasonable-doubt burden of proof.

> **6.** **Appellant has failed to establish that the trial court's venue instruction was erroneous**.

Following the standard of review of charge error, we progress no further than the first step. *See Kirsch*, 357 S.W.3d at 649 (stating that in reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends). The trial court did not err by refusing to instruct the jury on vicinage or that venue had to be proven beyond a reasonable doubt. Indeed, even a theoretical application of the Vicinage Clause did not require the trial court to instruct the jury that venue had to be proven beyond a reasonable doubt.

We overrule Appellant's first point.

> **B.** **Appellant's second point: We reject Appellant's contention that he was harmed by the admission of the complainant's written description of abuse.**

In his second point, Appellant contends that the trial court committed harmful error by admitting as an excited utterance a note that the complainant had typed that described the acts of abuse. Months after it was typed, the complainant showed it to

the police officer who initially interviewed her. We have doubts about the admissibility of the note as an excited utterance and will assume that its admission was error.[2] Appellant claims that admitting the note was harmful because it bolstered the complainant's testimony that the abuse occurred in Tarrant County; however, we reject this argument because the note said nothing about where the abuse had occurred. Thus, Appellant's harm argument is hollow, and we hold that admission of the note was harmless.

The complainant testified that she had written a note on her phone that described the acts of abuse committed against her by Appellant. Months after writing the note, she had an altercation with her mother and went to a friend's house, and the police were called. During her conversation with the responding officer, the complainant began recounting her claims of abuse. Out of embarrassment, the complainant showed the officer her previously composed note rather than verbally describing what Appellant had done.

The trial court admitted the note based on the State's argument that it fell outside the hearsay rule because it was an excited utterance. *See* Tex. R. Evid. 803(2) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of

---

[2]We apply an abuse-of-discretion standard of review to the trial court's decisions regarding the admissibility of evidence. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

excitement that it caused."). The rationale for admitting an excited utterance is as follows:

> The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable [her] to fabricate information.
>
> To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement is made. Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving.

*Apolinar v. State*, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005) (footnotes omitted).

The State argues that the excited-utterance rule applies because the complainant was in an agitated state when she showed the note to the officer. That is a misfocused argument. The alleged hearsay statement is the note. The record contains nothing showing that the complainant "was under the stress of excitement caused by the event or condition" when she composed the note months earlier. *See id.* We will assume that the admission of the note was error.

With our assumption of error in place, we turn to the question of harm and conclude that any error in the admission of the note was harmless. *See McCurley v. State*, 653 S.W.3d 477, 493 (Tex. App.—Fort Worth 2022, pet. ref'd) (assuming error without deciding and holding that any assumed error was harmless). The erroneous admission of evidence constitutes nonconstitutional error. *Gonzalez v. State*, 544

S.W.3d 363, 373 (Tex. Crim. App. 2018). We apply the following harm analysis to that category of error:

> When an error is non[]constitutional under Rule 44.2(b), as is the assumed error here, we will disregard the error unless it affected the defendant's substantial rights. Tex. R. App. P. 44.2(b). This requires us to view the entire record and reverse only if we conclude that the error had a "substantial influence" on the outcome of the proceeding. *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002) (internal quotations omitted); *see Sanchez v. State*, 98 S.W.3d 349, 357 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (explaining that, when a defendant pleads guilty, the proper Rule 44.2(b) analysis is whether the error had a substantial influence on the decision to plead guilty). Put differently, if we have a "grave doubt" as to whether the outcome was free from the substantial influence of the error, then the error is reversible. *Burnett*, 88 S.W.3d at 637–38. A grave doubt exists when "the matter is so evenly balanced" that we feel "in virtual equipoise as to the harmlessness of the error." *Id.*

*McCurley*, 653 S.W.3d at 493–94.

The note consists of a single paragraph that describes the abuse the complainant suffered and is consistent with her testimony. As a general proposition, "[i]t is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence." *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)). This principle alone frees us from a grave doubt that the note had a substantial influence on the outcome of the proceeding. We are even less concerned in view of Appellant's admissions that

19

he abused the complainant.[3] Beyond this, Appellant's central argument regarding why he must have been harmed by the admission of the note is unconvincing. Appellant challenges not that the abuse occurred but where it occurred. The note says nothing about that fact. We acknowledge that it may have lent support to the timeframe that the complainant gave regarding when the abuse occurred, but that slight bit of corroboration—in view of the complainant's testimony and Appellant's admissions— does not prompt the level of concern that we must have to conclude that the admission of the note was harmful.

Accordingly, we overrule Appellant's second point.

## IV. Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 26, 2025

---

[3]The CPS investigator testified that Appellant admitted that he had inappropriately touched the complainant. Appellant claimed that he had already dealt with the sexual misconduct and had sought forgiveness for what had happened, that "it wasn't anything to him anymore," but that "it was a thing" to the complainant, and that it was something that she needed to get over.